[Sac. No. 4331. In Bank.—August 28, 1930.]

RAY E. PONSONBY, Individually and as Executor, etc., Respondent, v. SACRAMENTO SUBURBAN FRUIT LANDS COMPANY (a Corporation), Appellant.

230

Butler, Van Dyke, Desmond & Harris, Huston, Huston & Huston and Henry & Bedeau for Appellant.

Ralph H. Lewis and George E. McCutchen for Respondent.

THE COURT.—This is an appeal from an order denying a motion to dissolve an attachment.

On October 5, 1928, respondent, Ray E. Ponsonby, individually and as executor of the estate of his deceased mother, filed an action in the Superior Court of Sacramento County, naming the Sacramento Suburban Fruit Lands Company, a corporation, and L. B. Schei as defendants. The action was for damages, caused, it is alleged, by certain fraudulent representations made by appellant by which the Ponsonbys were induced to exchange real property in Minnesota for property of much less value in California. At all times here involved appellant has been, and now is, a foreign corporation, organized and existing under and by virtue of the laws of Minnesota, and was, and still is, resident of that state, owning, however, various properties in this state.

The alleged fraudulent transaction grew out of the following facts: Respondent and his mother were residents of and owned certain real property in the state of Minnesota. They were desirous of exchanging the same for a farm in California. In furtherance of this desire they communicated with appellant's agents in Minnesota, appellant then being in the business of selling farm lands in California. Respondent became interested in certain property then owned by appellant in this state, and came to California and examined various properties of appellant in and about Sacramento County. Respondent then returned to Minnesota and, after some further negotiations, exchanged the Ponsonby property in Minnesota for a farm of appellant in

California, appellant paying the Ponsonbys $1,000 in cash in addition. All documents and papers were prepared and delivered in Minnesota. It is alleged that the Ponsonbys were induced to make the exchange by reason of certain fraudulent representations of appellant's agents as to the value, character and fertility of the California property. It is alleged that these false and fraudulent representations were made both in California and in Minnesota.

After the exchange had been effected the Ponsonbys came to California and took possession of their farm. Over a period of time they expended over $9,500 in improving the property, all of said sum being expended before the discovery of the falsity of the representations that had been made to them. Upon discovery of the alleged fraud respondent brought this action. On the same day the complaint was filed respondent attached certain property of appellant in this state. The appellant appeared specially and for the sole purpose of moving to dissolve the writ of attachment. This remedy was refused by the trial court, hence this appeal.

Appellant's contentions are two in number:

1. Damages caused by fraud and deceit do not constitute an "injury to property" within the meaning of our attachment statute, section 537 of the Code of Civil Procedure.

2. Even if damages caused by fraud and deceit do constitute an injury to property, in this particular case the property injured was not "in this state," as required by the above code section.

The issues thus raised are of great importance, particularly since they have never been passed upon by any appellate court in this state. Moreover, unless an attachment will lie against nonresident tort-feasors in such cases the courts of this state will have no jurisdiction or power to aid resident plaintiffs even though the defendant tort-feasor possesses large holdings in this state.

In this particular case personal service on the appellant corporation is impossible, the appellant having removed all of its agents from this state, although still owning property here.

The basic code section on attachment in this state is section 537 of the Code of Civil Procedure. So far as pertinent here that section provides:

"The plaintiff . . . may have the property of the defendant attached. . . . 3. In an action against a defendant, not residing in this state, to recover a sum of money as damages, arising from an injury to property in this state, in consequence of negligence, fraud, or other wrongful act."

■ The writ of attachment was entirely unknown to the common law, and, therefore, the writ has only the scope that the legislature has chosen to accord to it. (*Hallidie* v. *Enginger*, 175 Cal. 505 [166 Pac. 1].) Subdivision 3, above quoted, was added to our code in 1905. (Stats. 1905, p. 433, sec. 1.) Before that time subdivisions 1 and 2 of the section permitted attachments only in express or implied contract cases. No attachment would lie in an action sounding in tort.

The question first presented is whether when a plaintiff has suffered damage by the fraudulent representations of a nonresident defendant, has he suffered an "injury to property" within the meaning of subdivision 3 of section 537 of the Code of Civil Procedure above quoted? ■ The answer to that question hinges on the proper interpretation of the term "property" as therein used. The term is a generic one, and its meaning in any case must be determined by ascertaining the sense in which it was used. When unqualified the term is sufficiently comprehensive to include every species of estate, both real and personal, whether choate or inchoate (*Teschemacher et al.* v. *Thompson*, 18 Cal. 11 [79 Am. Dec. 151]), whether corporeal or incorporeal (*King* v. *Gotz*, 70 Cal. 236 [11 Pac. 656]). The word is sometimes used in the sense of "estate" (*Walther* v. *Sierra R. R. Co.*, 141 Cal. 288 [74 Pac. 840]). In 6 Words and Phrases, 5693 et seq. (First Series), and in 3 Words and Phrases, 1275 et seq. (Second Series), are to be found many definitions of the term amply supported by authority. The following are typical:

"Property signifies every species of property. It is *nomen generalissimum* and comprehends all a man's worldly possessions."

"In its proper sense property includes everything which goes to make up one's wealth or estate."

In *King* v. *Gotz, supra,* at page 240, the term is defined as "including all that is one's own, whether corporeal or incorporeal."

We find no reason to believe that the legislature did not intend to use the word in the above broad and comprehensive sense. There is nothing to qualify the expression either in the code section in which it was used or in any other related section. We are of the opinion, therefore, that the expression was so used in this statute. ■ It therefore follows that any diminution of a plaintiff's estate by the fraud of another amounts to an "injury to property" within the meaning of the section. This fact becomes more apparent if we examine the actual facts of this case, as disclosed by the allegations of the complaint. Before the alleged fraud and deceit were practiced on the Ponsonbys they had a worldly estate consisting of real property in Minnesota of the value of $5,500. After the fraud had been perpetrated they had a worldly estate of $1,000 cash and real property in California valued at $500. The worldly estate of the Ponsonbys had been diminished, or injured, to the extent of $4,000. In such cases the injury consists in the wrongful diminution of the plaintiff's worldly estate.

No other jurisdiction seems to have directly passed upon the point. One of the cases most nearly in point is *Worth v. Trust Co.*, 151 N. C. 191 [65 S. E. 918]. In that case the action was against nonresident defendants for wrongfully conspiring to injure plaintiff's interest in a corporation. The statute of North Carolina then provided that an attachment would lie in cases of breach of contract, wrongful conversion of personalty and any "other injury to real or personal property in consequence of negligence, fraud or other wrongful act" (Revisal of 1905, sec. 758). The court held that the term property as therein used included the interest or investment of the kind involved and that therefore the attachment would lie. At least one state by statute has defined the terms "injury to property" as meaning any action by which the estate of another is lessened. (Supp. N. Y. Ann. Code Civ. Proc., sec. 3343, subd. 10.) The definition of "injury to property" found in section 28 of the Code of Civil Procedure, in California, is merely a general definition, and that section does not control the interpretation of later amendments. (*Mason v. Buck,* 99 Cal. App. 219 [278 Pac. 461].)

It is therefore our opinion that the wrongful diminution of an owner's estate by the fraud and deceit of another

constitutes an "injury to property" within the meaning of section 537 of the Code of Civil Procedure.

We turn now to a consideration of the second problem presented on this appeal. Section 537 of the Code of Civil Procedure, as quoted *supra*, further provides that the injury must be to property "in this state." In this case plaintiff was a resident of Minnesota and exchanged his land there for property in this state. It is obvious that the real property secured by the plaintiff in California was not "injured" by the alleged fraudulent representations —it was the respondent's entire stock of this world's goods that was injured and at that time, inasmuch as respondent was a resident of Minnesota and the transaction took place there, it would seem that the property injured was in that state and not in California. This is appellant's contention and if these were the only facts we would be inclined to hold that although respondent has suffered an injury to property, that injury was not to property "in this state," and that, therefore, the attachment would not lie. But these are not all the facts. The complaint further alleges that after the exchange and before discovery of the fraud, respondent and his mother came to California and took possession of their new farm. They then expended over $9,500 in improvements. The complaint asks $9,000 damages for the depreciated value of the improvements, $4,000 damages for the inflated value of the land, and $5,000 exemplary damages. The law in this state is clear to the effect that in such cases the depreciated value of the improvements is a recoverable item of damage. Thus, in *Hines* v. *Brode,* 168 Cal. 507, at page 510 [143 Pac. 729, 730], it is said:

"He may likewise show and recover for the depreciation in the value of the improvements which he may have placed upon the property—a depreciation resulting from the fact that the actual value was not the represented value; and he may also recover for any other legitimate expenditures he may have made. This is not only the rule in California, but it is declared to be the rule under the great weight of authority."

These improvements were attached to real property in this state and their depreciation in value took place here. It therefore follows that property "in this state" was injured by the alleged fraudulent acts of appellant. The result

follows whether we consider the injury to the property to be the diminution of funds previously banked here and expended in making the improvements, or whether we consider it as a depreciation in the value of the improvements after becoming attached. Under either theory there was an injury to property which at the time was located within the state of California.

For the foregoing reasons it follows that the decision of the trial court was correct and the judgment must therefore be and it is affirmed.

Rehearing denied.